IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALFRED KING,

    Petitioner,                    No. 2:10-cv-2376 KJM KJN P

    vs.

GARY SWARTHOUT, Warden,

    Respondent.              FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding without counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims that his federal constitutional right to due process was violated by a 2009 decision of the California Board of Parole Hearings (hereafter "the Board") denying him a parole date, and that the Board's application of "Marsy's Law" to delay for three years a subsequent parole hearing violated the Ex Post Facto Clause of the United States Constitution.[1]

I. Due Process

        The Due Process Clause of the Fourteenth Amendment prohibits state action that

---

[1] Petitioner also claims that the Board's application of "Marsy's Law" violated his rights under the state constitution. That claim is not cognizable in this action because federal habeas corpus relief is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).

1

deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted).  The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."  Greenholtz, 442 U.S. at 12; see also Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987) (a state's use of mandatory language ("shall") creates a presumption that parole release will be granted when the designated findings are made.).

California's parole statutes give rise to a liberty interest in parole protected by the federal due process clause.  Swarthout v. Cooke, 562 U.S. ___ (2011), No. 10-333, 2011 WL 197627, at *2 (Jan. 24, 2011).  In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness.  In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).  However, in Swarthout the United States Supreme Court held that "[n]o opinion of [theirs] supports converting California's 'some evidence' rule into a substantive federal requirement."  Swarthout, 2011 WL 197627, at *3.  In other words, the Court specifically rejected the notion that there can

be a valid claim under the Fourteenth Amendment for insufficiency of evidence presented at a parole proceeding. Id. at *3. Rather, the protection afforded by the federal due process clause to California parole decisions consists solely of the "minimal" procedural requirements set forth in Greenholtz, specifically "an opportunity to be heard and . . . a statement of the reasons why parole was denied." Swarthout, at *2-3.

Here, the record reflects that petitioner was present at the October 7, 2009 parole hearing, that he participated in the hearing, and that he was provided with the reasons for the Board's decision to deny parole. (Dkt. No.10-2 at 64-96, Dkt. No. 10-3 at 1-40.) According to the United States Supreme Court, the federal due process clause requires no more.

The court therefore finds that petitioner is not entitled to relief on his due process claim.

II. Marsy's Law

Petitioner contends that the Board's application of the recently enacted "Marsy's Law" (adopted by the voters pursuant to Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law") to delay for three years his next parole hearing, violated the Ex Post Facto Clause of the United States Constitution. Under the statute as it existed prior to the enactment of "Marsy's Law," indeterminately-sentenced inmates, like petitioner,[2] were denied parole for one year unless the Board found, with stated reasons, that it was unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be extended up to five years. Cal. Penal Code § 3041.5(b)(2) (2008). However, at his October 2009 parole hearing, petitioner was subject to the terms of the amended statute, which authorizes denial of a subsequent parole hearing for a period up to fifteen years. Cal. Pen. Code, § 3041.5(b)(3) (2010). The shortest interval that the Board may set is three years, applied to petitioner herein (Dkt. No. 10-3 at 32-39), based on a finding that the prisoner "does not require a more lengthy period of

---

[2] Petitioner is serving an indeterminate sentence of 17-years-to-life with the possibility of parole, based on a 1979 conviction for second degree murder with a firearm enhancement.

3

1  incarceration . . . than seven additional years," Cal. Pen. Code, § 3041.5(b)(3)(C).

2  Petitioner asserts that application of the extended deferral period violates the Ex
3  Post Facto Clause because it significantly increases the risk that petitioner will suffer increased
4  punishment (longer imprisonment) than he would have received under the prior statute, because
5  "it is likely he would be found suitable in one or two years." (Dkt. No. 1, at 25.).  Petitioner
6  avers that the Board is now "stripped of the authority to conduct another hearing in one year,"
7  that "Proposition 9 eliminates the Board's authority to consider Petitioner for parole annually or
8  even every two years." (Id. at 24, 25.)

9  The Constitution provides that "No State shall . . . pass any . . . ex post facto
10 Law." U.S. Const. art. I, § 10.  A law violates the Ex Post Facto Clause if it:  (1) punishes as
11 criminal an act that was not criminal when it was committed; (2) makes a crime's punishment
12 greater than when the crime was committed; or (3) deprives a person of a defense available at the
13 time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52 (1990).  The Ex Post
14 Facto Clause is also violated if:  (1) state regulations have been applied retroactively to a
15 defendant; and (2) the new regulations have created a "sufficient risk" of increasing the
16 punishment attached to the defendant's crimes.  Himes v. Thompson, 336 F.3d 848, 854 (9th Cir.
17 2003).  Not every law that disadvantages a defendant is a prohibited ex post facto law.  In order
18 to violate the Clause, the law must essentially alter "the definition of criminal conduct" or
19 increase the "punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441-42 (1997); Souch
20 v. Schaivo, 289 F.3d 616, 620 (9th Cir. 2002).

21 California Penal Code section 3041.5 has been amended several times since the
22 date of petitioner's conviction to allow for longer periods of time between parole suitability
23 hearings.  Ex post facto challenges to those amendments have all been rejected.  See e.g.
24 California Department of Corrections v. Morales, 514 U.S. 499, 509 (1995) (1981 amendment to
25 Section 3041.5, which increased maximum deferral period of parole suitability hearings to five
26 years did not violate the Ex Post Facto Clause because it simply altered the method of setting a

parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not a violation of the Ex Post Facto Clause to apply Section 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the 1977 implementation of California's Determinate Sentence Law); Clifton v. Attorney General Of the State of California, 997 F.2d 660, 662 n.1 (9th Cir. 1993) (same); see also Garner v. Jones, 529 U.S. 244, 249 (2000) (upholding Georgia's change in the frequency of parole hearings for prisoners serving life sentences, from three to eight years).

Recently the Ninth Circuit overturned a district court decision granting preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the amended deferral periods established by Marsy's Law. Gilman v. Schwarzenegger, ___F.3d___, 2011 WL 198435 (9th Cir., Jan. 24, 2011). The court found it unlikely that plaintiffs would succeed on the merits of their underlying challenge premised on the Ex Post Facto Clause. The court initially compared and contrasted Marsy's Law with existing Supreme Court precedent:

> Here, as in Morales and Garner, Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole. However, the changes to the frequency of parole hearings here are more extensive than the change in either Morales or Garner. First, Proposition 9 increased the maximum deferral period from five years to fifteen years. This change is similar to the change in Morales (i.e., tripled from one year to three years) and the change in Garner (i.e., from three years to eight years). Second, Proposition 9 increased the minimum deferral period from one year to three years. Third, Proposition 9 changed the default deferral period from one year to fifteen years. Fourth, Proposition 9 altered the burden to impose a deferral period other than the default period. . . . Neither Morales nor Garner involved a change to the minimum deferral period, the default deferral period, or the burden to impose a deferral period other than the default period.

Gilman, 2011 WL 198435, at * 5. The Ninth Circuit found these distinctions insignificant due to the availability of advance parole hearings at the Board's discretion (sua sponte or upon the request of a prisoner, the denial of which is subject to judicial review), reasoning that, "as in

Morales, an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing." Id. at *6, quoting Morales, 514 U.S. at 513.  The court concluded that plaintiffs had failed to demonstrate a significant risk that their incarceration would be prolonged by application of Marsy's Law, and thus found that plaintiffs had not established a likelihood of success on the merits of their ex post facto claim.

In addition to these preliminary conclusions by the Ninth Circuit that Marsy's Law does not appear to violate the Ex Post Facto Clause, at least one district court has dismissed a petitioner's challenge to the law on the ground that it improperly duplicates the class action claim still pending on the merits in Gilman.  See e.g. Bryant v. Haviland, 2011 WL 23064, *2-5,15 (E.D. Cal., Jan. 4, 2011).  That court noted that petitioner therein, as here, appears to be a member of the Gilman class "of prisoners convicted of murder and serving a sentence of life with the possibility of parole with at least one parole denial . . . challeng[ing] the state procedures denying class members parole as well as their deferred parole suitability hearings following a finding of parole unsuitability." Id. at *5.  Relying on established precedent precluding a member of a class action from seeking, in an individual action, equitable relief that is also sought by the class, see e.g. Crawford v. Bell, 599 F.2d 8990, 892-93 (9th Cir. 1979), the court dismissed petitioner's claim.

In light of these cases, the court finds that petitioner is not entitled to relief in this action on his ex post facto claim.

III.  Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 4, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

king2376.157